My name is Jeff Steadley, and I appear on behalf of Deleese Allen, the mother of Carolee Williams, deceased. In my brief time before the Court, I'd like to principally address three issues, the first being the absence of jurisdiction in this case, based on the appropriate standard of review. Second being the abundant foundation for duty in this case in Texas case law, and the third being statutory law that applies to duty as well. Courts where this case began, shortly after Carolee died, an application was made in state court for Walmart to preserve evidence. Walmart was the only defendant sued in that because they were the only ones that had videotape and receipts and other information concerning the demise of Carolee. She had been on the premises of Walmart consistently for over two and a half days, if you count the 24 hours or so that her body remained in the parking lot before it was discovered. The case was removed to federal court shortly before we would have the hearing on the temporary restraining order to preserve evidence, and at that time a motion to dismiss was filed contemporaneously. We had actually, it's arguable that we had a pleading against anybody in the removed case, although there was a pleading for damages, which was for the trial court and the state system to know that we were asking for evidence that pertained to a potential controversy. We then amended as of right under Rule 15, and we assert that the standard of review that the court should apply to the Joinder issue, if the amendment is made as of right under Rule 15, should be as if the complaint had been filed in its original form after it was filed under Rule 15. Alternatively, if the court looks at Joinder based upon, a review based upon the futility of the plan to make a case against the nondiverse defendants, then under this court's holding and stripling, the 12B6 standard should apply. So either way, we think that this court should be viewing the jurisdictional issue on Joinder, the pleadings piece of that, under the 12B6 standard. We believe that it's under stripling. The pleadings are viewed in the light most favorable of the plaintiff, with every doubt resolved in favor of the plaintiff, well pleaded facts are taken as true. The issue is not whether the plaintiff will prevail, and this court has said that even if a savvy judge feels that it's improbable that the plaintiff will recover, or the recovery is very remote or unlikely, the pleadings are still sufficient. And this court in Davidson, Axel Davidson v. Georgia Pacific, said that it's upon the burdens on the defendant to demonstrate by evidence the lack of a possibility of liability on the part of the nondiverse defendant. So those are the basic rules of the proceeding as established by this court. The court will note that there is no evidence of any kind presented by Walmart in the lower court. All of that, though, assumes that there is some legal duty. That is true, Judge. So that's your second issue. It is my second issue. And my point here is that Walmart had the evidence, they had collected it, and had they wished to provide the district court in this court with evidence of what actually occurred, they could have done so. If their position was that somebody there didn't do something or that there was some excuse or reason why our pleadings were deficient in some fashion, they could have presented that evidence to the court. They did not. What they did instead was to make assertions in pleadings that the trial court took, at least to some extent as fact, based on the opinion that you wrote. And one of the—this is incredibly important here because if we look at the issue of the paraphernalia issue on the towel that's used in huffing, right, the participant sprays the— Before you get down into particulars, what is your best theory that a vendor has a duty to an impaired adult to not sell them an intoxicant? What theory? Is it statutory? Is it common law? And the best Texas case you've got would really help. All right. So I have three. But I want your best one first. Best one first. DeLago. A premises liability. Yes, sir. Okay. But this incident occurs in the parking lot. On the Walmart premises. And it occurs all on Walmart premises. She remains in the parking lot from the time she gets there at 10.30 on Sunday night until she dies in that same parking lot some 50 hours later. And the only place that she goes, other than the parking lot, is inside the Walmart. There's nothing wrong with the property, right? No, that's right. In the DeLago case, Judge, it's a case where there's a group of bikers and a group of, right, you know the case, right, a group of sort of fraternity people. And that escalates over time until there's a fight and the plaintiff is injured. And there, the Supreme Court of Texas says that the duty arose not because of defect in the premises, but because there was a danger that was viewable by the property owner that could reasonably result in harm or injury the property owner had the opportunity to prevent or lessen the damage and did not do so. That's exactly what we have here. The second case on that line is the El Chico case, which is. But, but, but, slow down a little. Sorry. There's nothing inherently defective or, the, the cans themselves weren't a situation that was premises, liability, unsafe. I don't see how DeLago applies to your facts here. It seems to me that the sort of, the, the event that's difficult is that they should have perceived she was mentally altered and would then abuse a substance. That's right. That's a lot closer to El Chico. It is closer to El Chico in, in that sense. That's correct. But the, the reason that I picked either one of those would have been my second best choice. But the reason I chose DeLago is because in this circumstance, we're not dealing with a single sale of, of intoxicating or dangerous volatile chemicals. But almost nine or ten over a 27-hour period, involving maybe 60, as many as 60 cans, to buy people who observe my client with feces, urine, vomit, and hair, appearing naked in the store, reporting seizures, reporting that she doesn't know where she is, and that the person that interviewed her said that she didn't seem to know where she was. And instead of doing anything at all to, to either stop her from buying further intoxicants or calling someone to say we have somebody in our store that's half naked and appears to be mentally ill, they just sell her some more dusting until she takes enough that ends up taking your life. So that's, it, El Chico is very, very poignant because their sale of alcohol, not in and of itself a duty against doing that, but if you know the person is intoxicated, their, the duty arises. And that's been true in Texas since 1883 at least. And in 1993 in the Smith versus Sewell case, the Texas Supreme Court was presented with the issue, well, what if it's just the person who, who is over-served, what if it's just the drunkard who is injured, and the Supreme Court of Texas says the duty exists, comparative responsibility also exists, so you may not make it home, but you're entitled to your day in court. What post-El Chico case stands for the proposition and duty you're asserting? The reason I ask that is it looked to me like the Supreme Court has said that El Chico is superseded, it's been preempted, and the best recourse is to go to Texas legislature and say if these aerosol cans are as dangerous as alcohol, you need to have a, an equivalent statute. But there, but you, you know, you see both parties have cited national convenience that under Texas law, vendors just do not seem to have a duty to observe the purchaser. And if, if that's a solid and bright-line rule, then there wouldn't be an El Chico-type duty. Right, so we assert that it's not as bright-line, there's a bunch of reasons for that. The Smith v. Sewell case is post-Chico, that's 1993, that's six years later, and decided on the basis of the individual. We also cite several other cases that follow the same basic general rule. This Court has indicated that the, Texas follows the general rule that a duty, duty arises when conditions are such that a prudent person would have anticipated and guarded against the occurrence which caused another's injury. That's the, the, the Boudreaux case out of this Court, citing a litany of Texas cases. And so on these facts, and I, I submit these, these facts are incredibly unusual, but I ask this Court to, to sort of have a broad-brush duty established here. But this lady repeatedly showed up, and, and clearly mentally imbalanced, and, and impaired, and clearly suffering from the facts of, of, of, of, of, of abusive inhaling and intoxication. All the earmarks were there. The warnings on the camps were being displayed in front of these people in live time by this woman who was clearly not in her right mind. And they continue to give her things that they're prohibited by law from selling to them, which contain warnings on the camp talking about the hazardous injury or death that can be caused by overuse of them. And so they knew that they were giving intoxicants to an intoxicated person, the same as in, in El Chico, the same as in the 1883 case that, that, that proceeded by 100 years, and the same as in other cases. We cite other, Eric? Yes, sir? Does all of that mean that these employees can be held in their own right, or, or does Texas law say that when they are performing their assigned duties, they cannot be held in, in their own right? Judge Wiener, I, I think that the best way to answer that is to say that it depends. There are certain circumstances, if the only basis for the employee's conduct is the role of employee, then it's within the course and scope. If it is something different than that, then it's not course and scope. And so as we look at the course of conduct here, when we look at Chapter 45, which, which, which makes it criminal to provide paraphernalia to someone who is abusing inhalants, and we have, in this case, allegations that that's exactly what happened by individual employees. Walmart admits, at page 174 of the record in footnote 3, that if these employees were selling paraphernalia to someone who was abusing inhalants, that's outside the course and scope of employment, so that would be an individual liability circumstance. Some of these other things, I think, would be within the course and scope, but I think both are involved on, on the facts of this case. Significantly, the 485 cause of action against the individual employees, the district court, who doesn't like much of our case, but says with respect to this, it appears there would be a cause of action, but the district court says we're, we don't have a viable case because we don't, we don't identify the person who sold the towel. Walmart comes to this court and says, they say a towel and maybe some others, we don't really know. Post the dismissal, and in this record, we know that there were four towels sold on three different occasions, and, and so that, that appears at the record at 309, 310, and 318. So while the, while Walmart is telling this court their pleadings are really sort of iffy on this towel issue, they know for a fact that we're absolutely correct. But again, that's thrown in, in, in the mix of sort of an evidentiary lack on the part of the plaintiff. And here we're in, in the position of trying to satisfy Walmart and the district court about evidentiary issues when our main pleading was to preserve evidence so we could find out what happened. And so if we look at the standard review that this court has established for this circumstance, which only makes sense because the plaintiff is before the court without the opportunity to actually get the evidence. And here, it's especially true because Walmart had exclusive possession of the evidence. My client's daughter died. So we have any, we, we were able to, to gather some evidence from police reports, from, from news media support, but Walmart had all the evidence. And so we plied as best we could if Walmart wished to say that our pleadings were insufficient. From a factual basis, they had the ability to do that, and they chose not to do that, and I think this court should take notice of that. Did the evidence that was given show the, the work schedule for each of these three Walmart employees? It, it, it did not, Judge. The information that we received with respect to the sale of paraphernalia had employee numbers which are undecipherable by us without discovery, and of course we didn't, we weren't allowed to take any discovery. But what I would like to point out to the court is that in the, in the pleadings we did make, we said, and I quote, each individual named in this complaint knowingly delivered or sold paraphernalia to Carolee Elaine Williams at a time when they knew that Carolee Williams intended to introduce into her body volatile chemical in violation of section 485.031. So that is as clear a statement of a violation of Chapter 485 as could be made. The people are specifically identified, and based on the appropriate standard of view, that should tell this court that these three individuals are viable defendants under Texas law, and they're managed appropriate because there's a lack of diversity. The, the other areas of the common law of the state of Texas that we've talked about spring from the general proposition that a duty arises if the circumstances are such that a reasonable person would limit the harm. And we cite section 390 of the restatement, which has to do with chattels. Most of those cases are provided with guns to minors or to adults, and the rule is the same. It's not wrong to give somebody a gun, but if you give somebody a gun that you know has incompetent or mentally unbalanced or a child, then you're going to be responsible if something bad happens. And so the idea of giving someone a dangerous instrumentality, when you actually know... Selling someone. Selling or giving. Judge, either one. The national convenience case, what's your view on that? I thought that carved out an exception for the vendors. So my belief on, on the, a proper reading of the national convenience store is that a mere sale is not going to create liability. But if you look at this court's case involving the providing of guns, I think it's Moran, the court acknowledged that Texas provides that providing someone with a dangerous thing like a gun, if they know that they're incompetent, creates liability. And there's a Texas case involving a police officer who sexually assaulted a woman, and the chattel that was provided there was a gun, a badge, and handcuffs, which are the usual accoutrements of a police officer, wouldn't necessarily, so giving someone those things wouldn't create liability. But if you know that the person that you're giving the chattel to is incompetent or... The guns are a lot different than dust remover. They are, Judge. They are very different, except that in the current, in this century, the idea, the danger of dust remover uses inhalant, I mean, we have the intoxicants now are, well, they're just crazy, the span is much greater than when all of us were younger, I mean, and we were talking about the issues were about guns and alcohol. But this particular product is known to be dangerous, it's prescribed by the health and safety code, and the people who sell it are prohibited to sell to minors, and the warnings on the can indicate that the absolute dangers to bodily injury and possibly death are there, so it's as dangerous as a gun if it's given to someone who is mentally incompetent that's going to use it to maybe kill themselves. Hang on, Judge Higgins. So just your theory of liability, you're claiming Del Lago premises liability at least is a very, is one of your most powerful ones, whereby there'd be no reason to distinguish any hardware store in Texas, any hardware store that sells glue or an intoxicant faces liability if the person buying it from them is sufficiently impaired, there's a coordinate duty to not sell it, and that's a premises liability theory, or it's an El Chico negligent entrustment theory, either one, one of the two. Either one, but I think that the Del Lago case is one in which the liability doesn't arise out of the condition of the premises, but the condition of the people that are on the premises that the property owner has the ability to control, and so here in Del Lago, the hotel could have come in and said, all right, everybody calm down, we're not doing this. In our case, Walmart could have said, okay, enough is enough, but I will tell the court that it's not the mere selling of the intoxicant that we believe generates liability, it is the selling of the intoxicant to someone that you absolutely know is abusing it and is going to hurt himself with it. It would be like selling a gun if someone says, I'm really feeling sad, can you sell me a pistol and some ammo, I'm going to shoot myself right here, and you give them the gun to shoot themselves. It is a little more attenuated because it's a drug, but we believe in the legal parlance it's the same. Thank you. Thank you. You have rebuttal. When you come back on rebuttal, help me understand what it is you would replead had you been allowed to amend. Yes, Your Honor. All right. All right. Counsel? Good afternoon, Your Honors. My name is Kyle Giacco, and I represent Wal-Mart stores, Texas LLC, Shanda Hunton, Loretta Brewer Winter, and Gregory Mouton, the three Wal-Mart employees that were attempted to be joined to the case. I'm going to attempt to address the three points that counsel raised. First, with regard to the procedural issues, plaintiffs filed this case not just as a TRO, but sought damages, and that's why we were able to remove it, and there was no real question that it was a removable action. Had they chosen, there is, in fact, a procedure under Texas law to take a pre-suit deposition. They could have simply asked for a pre-suit deposition under Rule 202 of Texas Civil Procedure. They chose not to do that. They instead filed suit against Wal-Mart and sought damages, and then sought a whole bunch of immediate depositions. After we removed the case, they then tried to join Wal-Mart's employees to defeat diversity and get it back to state court. Because this was done, the attempt to join them was done after the removal, Rule 1447 in Hankson comes into play, where the court has the discretion to allow the joinder or not allow the joinder of parties that will defeat diversity, applying those factors. The court did not rely solely on futility as a matter of applying those factors, but instead looked at all the circumstances, including the fact that the plaintiffs joined these individual employees, stating in their plea, and they don't know for sure they're even the ones involved, in order to effectively defeat diversity. They also looked at the types of claims that were being made against them and whether those were viable claims. We have briefed that these are not viable claims against the individual employees, because if there was a cause of action for selling the dust off improperly, that would only be done in their role as employees. And there is a great deal of case law that says when an employee only would be liable for an act they take within the course and scope of their employment, they are not liable. Where the counsel points to something where we've said, well, we may make a distinction where they're outside the course and scope of employment, that would, if there was some fact and there were no facts that are alleged within the pleadings that would satisfy Iqbal and Twombly, that would show that the individual employees had actual knowledge that the towels that were being purchased were going to be used as paraphernalia. If that was the case, there would at least be an argument, I believe, that they knew they were violating the law, and that might have taken them out. Were all the sales made by numerous Walmart employees, were any of the sales made repeatedly by the same employee? As far as I'm aware, Your Honor, I believe each sale was made by a different employee, and if you look at record, you'd ask for a schedule. There's not a schedule, but on page 321 and 322 of the record in our disclosure, there is a naming of each individual employee that had interaction with the deceased and a description of what that interaction is. Does it describe the time of day and whether there were different schedules for each of those employees? No, Your Honor. It does not go into that detail. What it says is things like the individual's name checked out, Carolee Williams, at the garden center. There are separate receipts within the record that do give time, and there are times within the plaintiff's petition where they do provide different time periods when she was supposed to have gone in the store. So, with regard to joinder of the non-diverse defendants and whether this court has jurisdiction, we believe the court absolutely used proper discretion in not allowing the joinder of the three individual employees and the two manufacturers. The plaintiffs had no good faith basis to sue the two individual manufacturers. They did. In fact, it is the third manufacturer who is the manufacturer of the product. It has not come up within the course of these proceedings. Because of that, in addition, the court also properly ruled there was no independent cause of action against the individual employees, so the court properly dismissed those claims as well, and therefore, this court has jurisdiction because that was improper joinder. First, they were not properly joined under the Hengson standard, and then it would have been improper joinder anyways in the alternative. Now, turning to the cases that the counsel cited, he goes to Del Lago first. Del Lago involved a very limited holding by the Texas Supreme Court that said that under those specific circumstances where over a course of an hour or two, tensions rose that the management of the bar at this hotel knew about creating a dangerous condition to third parties. That was basis for an actual premises liability. The premises condition was specifically the tensions that rose between these two groups of people. There is nothing analogous to this case. There is no dangerous condition that is analogous in this case. This was the acts of both Carolee Williams, and they are making allegations about the Walmart employees, but there is no premises condition that has even been cited. With regard to El Chico, as this court pointed out, that came down, and within a week, and actually it is a little hard. I have seen contradictory about whether the legislature acted simultaneously or a couple days later, but within a week, El Chico was no longer the law, and in fact, the court put forth a statutory scheme about dram shop liability, and now dram shops are a special case, and this is an issue that has been an issue in all courts for a long time about what liability for parties that specifically and purposefully serve alcohol, which its purpose is to be an intoxicant, and that is why they are selling it, what liability they should have. The Texas legislature chose to put in a specific statutory scheme. Here, this is a product that has an use, and it just happens to be misused. There are a lot of products that are subject to that, as this court pointed out, airplane glue, nitrous oxide, if you want to make whipped cream, anything like that. When I pointed that out, they have also relied on the Morin case, which he was describing right at the end of his argument, which you didn't distinguish in your brief. I believe we did address Morin. How do you distinguish there? Morin involves a case where a police officer gave a gun to his son. It's a straight up negligent entrustment case. It did not involve the sale of a product. But am I correct that in Morin, the court seems to embrace a larger sort of 390 negligent entrustment theory? They cite to some cases that at least discuss some indicta. None of the cases they cite actually go against the cases that specifically say that there is no liability for a seller of goods under 390 for negligent entrustment. There's a difference between entrustment and sale. The only cases that they cite within Morin, there is one case that the plaintiffs cited, that they didn't bring up in their oral argument, but it was... When they're talking about the police officer's general negligence, ordinary negligence. The language of the court is if the plaintiffs can show Officer Morin was aware of reckless tendencies, then they can show a corresponding duty to act. Negligence arising out of the sale of a weapon to a man with history of mental problems who later uses the gun to commit suicide. Why isn't that almost exactly what we've got here? Well, I'm not quite sure where they're getting the sale part of that, because otherwise they're stating standard Texas law on negligent entrustment. Well, they're quoting from a Texas Court of Appeals case, Diggles v. Horwitz. So Diggles is a case that doesn't actually hold that. It does have that language in there, in dicta, but doesn't reach it. In fact, it reaches the opposite result, and it does not appear that that issue was particularly briefed in Diggles, as far as I can tell, and I couldn't find any authority that then further went with Diggles on this idea that a seller of goods can be liable, and it flies in the face of all of the cases that we have cited under 390 that makes this distinction between seller of goods and negligent entrustment. Yeah. It just, the more I dug, the less clear I was that El Chico is a complete dead end. It seems like it keeps surfacing in these extreme cases where a demented person purchases a gun, purchases, seller. So even when you look at national convenience, it's citing, you seem to know these cases very well, so it's citing the Kennedy decision in 1984, approvingly. But in Lafleur and in Kennedy, they seem to be talking and quoting from 390 as to seller liability. Yeah, sure. Well, if I understood your point correctly, there are some that, for better or worse, use a little bit of loose language out of El Chico in some of these earlier cases, but I think the later cases and the cases where it is actually part of the holding of the right-line rule, seller can look someone who's naked in front of them, soiling herself, and sell them. It's an adult, not a minor, and we don't have paraphernalia. They can give them an item that just the foreseeability is near certain as to risk of self. Well, I might disagree on the foreseeability because, in fact, the plaintiff in this case was doing her best to fool the Walmart employees by claiming to have had a seizure, et cetera. But putting that aside, no court has held that there is any such duty for the sale of this product. And that has to be your position to prevail here. Yes. Let me continue that by asking it a little differently. Your brief says that joining additional employees would not have changed the claim because the trial court properly found that the employees could not be liable in their individual capacities. What is the basis for saying that they could not be held liable in their individual capacities? Your Honor, because there is anything about the sale of the product, if they violated the law while within the course and scope of their duties in the sale of the product, that would be their liability would only arise out of their employment and, therefore, that does not give rise to individual liability for them, only liability because they are employees of Walmart. And I actually in this case don't have the cases off the top of my head, but this goes to this happens. This is an established Texas law. Yes, Your Honor. It's like Lycht for that. Lycht. I'm sorry. That was the case, obviously. Lycht and Miller both seem to stand for the opposite, that if the individual employee commits a parallel tort, whether they are driving during their work within scope of work or not, the individual could be liable. But in those cases, for the parallel tort to exist, there has to be a separate duty. So for example, using your driving example, individuals who have a their example would be they've sufficiently pled that they gave four towels, they at least must have known giving towels with 60 bottles of this aerosol thing that she was going to use it to huff, that, therefore, they sufficiently pled a civil tort analog to the 485 criminal statute. Well, first and foremost, the civil tort for the paraphernalia requires not new or should have known. It requires actual knowledge, and they pled no facts to give rise to actual knowledge. Second... The knowledge that the product would be abused? Yeah. And, in fact, the first, in fact, they did the exact opposite, because within their pleadings, there's descriptions of using the towel for other purposes. She wrapped it around her waist, she used it to clean up. That, if anything, shows that there is no actual knowledge of misuse. Second, they are only selling this product within, so as opposed to a driver who drives, has a separate duty in the state of Texas to use reasonable care while driving, no matter what circumstance, someone who works for a store... For example, there is case law... So, we've discussed El Chico, and again, with regard to Chapter 485, the thing that I think is most telling about Chapter 485 is, and why, again, we briefed out the issue about whether the criminal statutes would even give rise to a duty, because in this case, there's no guarantee, and it's not automatic, and you look at several factors, and we don't think in this circumstance that, one, there is no breach of the criminal statute plat, because there is no statute, nothing in the statute that prohibits selling to an adult under any circumstance, and the legislature had every opportunity to write it like that. Instead, they chose... Is the Ram Shop Act the only time they've stepped in, or has Texas done it for gun sales, too? I'm unaware of any law that Texas... Well, I don't know the answer to that question, Your Honor, whether they have preempted liability issues on gun sales at this time. If I were to guess, I would say yes, but I don't know the answer. I would expect... But what they did do here is create a specific statutory scheme, where they said there is no liability for... No basis to give rise to civil liability for sale to an adult. In fact, there's one thing that we haven't talked about, is even with regard to the sale to a minor, there is a defense to that if the product has a bitterant or something in it that makes someone sick. It's not in the record, but that is the case here. So, we have a separate issue there, where the statute takes into consideration, even with a sale to a minor, that if the product has these other features and warnings, etc., there's still no liability, even if it's sold to a minor. The opposing counsel cited two cases that I don't have immediate familiarity with, Smith v. Sewell. Based on his description, I don't have, but I don't think Smith v. Sewell is controversial as far as I understand what he cited for it. It was the proposition that under the Dram Shop Act, an individual, even if it's the person who is intoxicated and gets in a solo wreck, they can still sue the Dram Shop. I don't dispute that. But I don't think that is otherwise at issue here. Now, whether that would be something that they put in a statutory scheme involving inhalants would be something I think would be up to the legislature. I believe, I think, if I've answered all the Court's questions, I think I will give back the rest of my time. Thank you, sir. Thank you. All right. Counsel, you have rebuttal. Thanks, Your Honor. May it please the Court, let me first address the question that Chief Judge Stewart asked before I sat down on how he would replete. Let me preface this, Your Honor, with saying that based on the appropriate standard review, we believe that we have pled sufficiently as it is. But in answer to the Court's question, initially I think that we would expand on our pleadings of the Chapter 45 liability. The District Court found that that was a viable claim theoretically, basically, but found that it was not plausible in our case because the trial court said that we did not identify the individuals who actually sold the paraphernalia to the plaintiff. In fact, if you look at the pleadings that we actually filed, and I read them in my opening remarks, we specifically pled that the named defendants delivered or sold inhalant paraphernalia when they knew that they were going to be used by Carol Lee to inhale the duster. So we pled it. I don't know why they say we didn't plead it. I don't know why the District Court said. It's page 7 of our petition, and it's clear as it can be. So based on that, I would expand on that to try to satisfy what I believe is the District Court's almost evidential requirement where we pled these people did these things based on what we had at hand, and if those are taken as true, which they should be, then the question this Court has is does that state a cause of action? The trial court said that it did, inferentially at least, anyway. So I would do that. Secondly, in response to some of the remarks that were made earlier, the idea that the in front of them that's developing and can cause harm and can stop it or limit it, I would sort of expand on that for the trial court, because I think it's incredibly analogous. The court in Del Lago was very clear to say we're not creating some broad scope of liability here. What we're saying is that the premises owner becomes aware of a dangerous condition on were acting badly and was getting worse. Here we have one person acting badly and getting worse, but we have cemented from a logical and legal standpoint there's no apparent difference, so I would expand on that. Do you know of any Texas case that's extended Del Lago to a non-bar alcohol situation? I do not in the way the Court has phrased the question. I have not looked. But Del Lago springs from the general creation of Texas duty, which is, as I reported earlier, which is if a reasonable person is aware of a condition that can cause injury, they have a duty to lessen the injury if they have the power to do that, basically. And all the section 390 cases we cite are those ilk. We do not say that the sale of the chattel automatically creates liability. We say if you sell something or provide something to a third party that you know that is going to be used to harm themselves or others, that you have a duty not to do that. And that's exactly what we have here. I'd also tell the Court that we also talked about aiding and abetting in our pleadings, which is derided by the other side about being only involved in assaults. We cite the Clayton v. Richards case, and it just says that the general rule in Texas is that those who pursue a common plan design to commit a tortious act actually take part in it or further it by cooperation or lend aid to the wrongdoer are liable for the tortious act. And we think that's just another expression of how Texas would look at this from a duty standpoint where we're not saying that they're exactly in line, but the analysis of Texas courts is looking at this particular set of circumstances, and here we believe that they are extreme and outrageous. It's hard. It boggles the mind really to see 27 hours or so of this woman coming in and out of the had seizures and being so odorous that other people are complaining to the manager that this woman keeps coming into the store in this way, and they do absolutely nothing but take her into electronics and give her four more cans of the thing that they know to an absolute certainty she's using to kill herself. And so the... They rely heavily on the LaFleur case to respond to that notion that if she went out and shot somebody that Texas is pretty clear that they don't have any liability. I think that's wrong, Judge. I think that... Do you think their description of LaFleur is wrong? I think this Court's ruling in Morin is better, right, where, right, because the Court then looks at Texas law and says there was no duty on the ammunition case, but the Court analyzed it. Did they use reasonable care? Which tells you that they didn't. They said there's no evidence that they didn't use reasonable care. Well, you can say they didn't say there was a duty, but they're analyzing the case as if there's a duty, because otherwise they would say, hey, you can sell any ammunition to anybody you want to. We don't have to look at that. We're not going to talk about it. And generally appellate courts, as you're aware, don't like to talk about things they don't have to. I very much appreciate my time for the Court, and I know this is an unusual case, and I very appreciate that it's very clear that you all have read the briefs and are into the issues. And it's been my privilege to appear in front of you. Thank you. Well, we appreciate the help on it. It is a different case, that's to be sure. So I appreciate the oral argument from both of you, who know the law well, and that helps us a lot to get our head around, especially when we're looking at state law and trying to stay between the white lines, but at the same time, especially on a pleading case. You know, it's a pleading case, but it's an interesting little case, and we appreciate the help.